MARCELLA McCOMMONS, Plaintiff-Appellee, v. MOORMAN MANUFACTURING, Defendant-Appellant.

Fifth District   No. 79-383

Opinion filed March 20, 1980.

Mitchell & Armstrong, Ltd., of Marion (J. C. Mitchell, of counsel), for appellant.

Hogan & Jochums, of Murphysboro, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Appellant Moorman Manufacturing appeals from a judgment rendered by the circuit court of Johnson County in favor of appellee, Marcella McCommons. Appellant contends that pursuant to the rule enunciated in *Pedrick v. Peoria & Western R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the trial court should have granted its motion for a directed verdict at the close of plaintiff's case and all the evidence, or should have entered judgment in its favor by granting its motion for a judgment *n.o.v.* We disagree and therefore affirm the judgment of the circuit court.

Plaintiff Marcella McCommons testified that she was 45 years of age and lived with her husband on a farm in Dongola, Illinois, where they raised hogs and cattle. Mrs. McCommons did most of the work on the farm because her husband was disabled. On August 2, 1976, plaintiff took her pickup truck to defendant's place of business to purchase some hog feed. She backed to the loading dock and entered defendant's building.

Plaintiff testified that upon entering the building through the loading door, she noticed a trash barrel immediately to her left. To her right was a forklift, and "there was feed and salt setting along the right and left-hand side as I went in, and there was a bag of salt and feed spilled on the floor." She stated that she was walking through the building to get to the office when "my feet flew out from under me and I fell to the floor." Plaintiff testified that upon falling, her left leg bent under her and her left elbow and the back of her head hit the concrete floor.

Plaintiff said she was dazed after the fall, but got up and went into the office. She noticed that she had "grease and stuff" on the left elbow and left knee of her clothing. At the time of the fall she was wearing crepe-soled shoes which she had purchased approximately 4½ weeks prior to the fall.

On cross-examination plaintiff testified that she had walked along this same path in defendant's building between 50 and 100 times during the previous two years. She stated that on the day in question, she was looking where she was going at all times, that she did not see any obstruction to her path, that she saw no oil on the floor, that the spilled salt was approximately two feet in front of her at the time of the fall and that she did not see what caused her to fall. She also admitted that the tractor and other equipment on her farm were very greasy and it was from there that she had come to defendant's place of business.

Charles Barkleman was defendant's warehouse manager on August 2, 1976, and he testified that plaintiff came into his office and said she had fallen. He said he asked her if she had fallen on anything and she replied, "Nothing that she knew of." Mr. Barkleman said he did not observe anything unusual about plaintiff's clothing. He testified that he went to the scene of the fall but saw nothing, and that 10 to 15 minutes prior to the alleged fall, he had swept up the area after loading another truck at the dock. He also stated that the garbage can plaintiff testified she saw "was there to collect rubbage [sic], such as papers and feed that was possibly spilled on the floor sometime or another and had been swept up." While he testified on direct examination that the forklift was not used in the area where plaintiff fell, he acknowledged on cross-examination that photographs of the area of the fall indicated tire marks from the forklift, but "[n]ot like out" in the loading area.

There was other testimony as to the nature and extent of plaintiff's injuries and her damages, including a statement made by plaintiff and testified to by her treating physician in an evidence deposition that during the taking of a history on the day of the fall, she told the doctor that "she struck some loose grain or feed on the floor and her feet slipped out from under her * * *." Defendant made a motion for a directed verdict at the end of plaintiff's case and at the conclusion of all the evidence, both of which were denied. The jury rendered a verdict in favor of the plaintiff in the amount of $10,000. Defendant filed a post-trial motion, requesting a judgment n.o.v. or a new trial, which was denied and judgment was entered on the verdict. Defendant appeals.

Appellant contends that the trial court, pursuant to the *Pedrick* rule, should have granted the motions for a directed verdict or for a judgment n.o.v., and that its failure to do so mandates reversal. The Illinois Supreme Court stated the rule as follows:

"[V]erdicts ought to be directed and judgments n.o.v. entered only in those cases which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510.)

Unless the evidence in this case so overwhelmingly favors appellant, when viewed most favorably to appellee, that no verdict against appellant can stand, we must affirm the judgment of the trial court.

It is clear that most of the evidence in the case at bar is circumstantial. However, as appellant agrees, circumstantial evidence is sufficient to support a cause of action for negligence and sustain a verdict, provided the inferences the jury draws from that evidence are reasonable. (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 86, 368 N.E.2d 1299; *Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 191, 336 N.E.2d 528.) There was conflicting evidence at trial, and it is the function of the jury, not the

appellate court, to weigh the evidence and determine the credibility of witnesses. (*Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 87; *Kittoe v. Metropolitan Sanitary District* (1979), 70 Ill. App. 3d 197, 203, 387 N.E.2d 1031; *Didier v. Jones* (1978), 61 Ill. App. 3d 22, 27, 377 N.E.2d 572.) The conflicting evidence included, but was not limited to, the source and presence of oil and/or grease in the area of the fall, the presence and influence of ·spilled salt and/or feed. on appellee's fall, and the thoroughness of Mr. Barkleman's sweeping in the area of the fall 10 to 15 minutes prior to appellee's arrival. The jury could reasonably have found that appellant was negligent, and viewed most advantageously to appellee, the evidence does not so overwhelmingly favor appellant that the verdict rendered by the jury cannot stand.

For the foregoing reasons, the judgment of the circuit court of Johnson County is affirmed.

Judgment affirmed.

SPOMER and KASSERMAN, JJ., concur.